FILED

# United States District Court
## Northern District of Alabama
## Eastern Division

01 FEB 13 AM 9:59
N.D. OF ALABAMA

| | | |
|---|---|---|
| **Clayton A. Chandler,** | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-00-N-1899-E |
| | ] | |
| **Sgt. Terrance Schneider,** | ] | |
| | ] | |
| Defendant(s). | ] | |

**ENTERED**
FEB 1 4 2001

### Memorandum of Opinion

**I.   Introduction**

The *pro se* plaintiff, Clayton Chandler, brings this action against defendant Terrance Schneider, Sergeant of the Jacksonville State University Police Department, in his individual capacity, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983. The court has for consideration the defendant's Motion for Summary Judgment, filed on October 16, 2000 (Doc. No. 30). The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be **GRANTED**.

**II.   Statement of Facts**[1]

The facts, as garnered from the affidavit testimony submitted by the parties but viewed in the light most favorable to the plaintiff are as follows:

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), cert. denied, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).



Jacksonville State University ("Jacksonville State") is a state institution of post-secondary education, and Terrance Schneider ("Schneider") is a Sergeant with the University's Police Department ("University Police"). The plaintiff, Clayton Chander ("Chandler"), is a former student at Jacksonville State. On March 8, 1999, while Chandler was a resident student, he telephoned the University Police and requested that a police officer come to his residence and check for surveillance equipment. Defendant Schneider and a fellow officer were dispatched to Chandler's campus residence. When the officers arrived, Chandler invited them inside his home and asked that they conduct a search for electronic surveillance devices. Chandler allegedly reported hearing strange sounds from his refrigerator, lamp and tape recorder. According to Schneider, during the search, Chandler "seemed very animated and was convinced that someone was collecting information on him." (Def. Ex. 1, Affidavit of Sgt. Terrance Schneider). After conducting a thorough search, no surveillance equipment was found.

On March 11, 1999, Schneider made a follow-up call to Chandler. During their phone conversation, Chandler allegedly stated that, while in a library restroom, someone had photographed his face and penis without his permission. (*Id.*). According to Schneider, Chandler also voiced concerns that numerous individuals, including Nancy Edge ("Edge"), a Jacksonville State employee, had been "watching" and "following" him. (*Id.*). Chandler allegedly stated that he had ridden his bicycle to Edge's home in Gadsden, Alabama, to see where she lived. (*Id.*). After speaking with Schneider, Chandler visited the Student Health Center at Jacksonville State. While at the Health Center, Chandler allegedly became loud and angry, and threatened to harm a Jacksonville State employee and her husband. (Def.

2

Ex. A, Petition for Involuntary Commitment). According to witnesses, Chandler also made gestures suggesting the shooting of a handgun. (*Id.*).

Based on the series of events described above, the University Police became concerned for the safety of Chandler as well as for the safety of other Jacksonville State students and faculty. For this reason, Schneider and other officers once again visited Chandler's residence. During this meeting, the officers informed Chandler of pending disciplinary charges and suggested that he voluntarily submit to a mental examination. According to Schneider, Chandler "voluntarily" accompanied the officers to the Northeast Alabama Regional Medical Center in Anniston, Alabama. However, just two days after checking into the hospital, Chandler signed himself out. Thereafter, upon consulting with his superiors, physicians, an attorney, employees with the Calhoun County Mental Health Center, and probate court officials, Schneider initiated involuntary commitment proceedings against Chandler. An "Emergency Order" was entered by the Probate Court of Calhoun County and Chandler was committed to the Northeast Alabama Regional Medical Center for "necessary and appropriate" treatment. (Plf. Ex. 13). After Chandler was released from the hospital, an agreement was reached between Jacksonville State and Chandler's attorney whereby Chandler was allowed to withdraw from school without formal action on the allegation that he had threatened a Jacksonville State employee. (Plf. Ex. 10).

On February 9, 2000, Chandler filed this action in the United States District Court for the Eastern District of Virginia against both Jacksonville State and Schneider, in both his individual and official capacities. On July 6, 2000, pursuant to the provisions of 28 U.S.C. 1404(a), the action was transferred to United States District Court for the Northern District

of Alabama. By Order entered August 30, 2000, this court dismissed all claims against Jacksonville State,[2] and all claims against Schneider in his official capacity, on Eleventh Amendment immunity grounds. Chandler's claims are most difficult to analyze, being, as they are, clouded in a tangle of incomprehensible conclusions, evidentiary statements, irrelevant, rambling, and random remarks which simply defy any rational understanding. The court believes, however, that the claims stem from Schneider's March 11, 1999, efforts to convince the plaintiff to voluntarily submit himself to a mental evaluation, and the March 15, 1999, petition for his involuntary commitment.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of

---

[2] To the extent Chandler purports to assert a cause of action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), the court simply notes that is beyond question that FOIA applies only to federal and not to state agencies. *Johnson v. Wells*, 566 F.2d 1016, 1018 (5th Cir. 1978); *Philip Morris, Inc., v. Harshbarger*, 122 F.3d 58, 83 (1st Cir. 1997); *Day v. Shalala*, 23 F.3d 1052, 1064 (6th Cir. 1994). Accordingly, Chandler's FOIA claims are due to be dismissed.

material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to

5

determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. 42 U.S.C. § 1983 - Due Process Claims

Chandler seemingly alleges that his right to substantive due process was violated when Schneider convinced him to "voluntarily" submit to a mental evaluation and, thereafter, petitioned for his involuntary commitment.[3] Schneider maintains that Chandler's suit against him is barred by principles of qualified immunity. Before addressing that matter, however, the court must first determine whether Chandler has asserted a cognizable constitutional claim. *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991) (Before a court can grant qualified immunity, it first should determine whether the "plaintiff has asserted violation of a constitutional right at all"). If Chandler has failed to sufficiently allege a violation of a constitutional right, it is axiomatic that he has failed to allege the violation of a clearly established right. *See Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995).

While state and local government officials may undoubtedly be sued in their individual capacities, pursuant to 42 U.S.C. § 1983, for deprivations of due process, procedural or substantive, the Supreme Court and the Eleventh Circuit have consistently

---

[3] Although Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing his complaint, the Eleventh Circuit has tightened the application of Rule 8 with respect to section 1983 cases, requiring that a section 1983 plaintiff allege with some specificity the facts which make out his or her claim. *See Oladeinde v. Birmingham*, 963 F.2d 1481 (11th Cir. 1992). However, because Chandler is proceeding *pro se*, the court will construe the complaint more leniently than it would formal pleadings drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 175, 66 L. Ed. 2d 163 (1980). Chandler must nevertheless meet the essential burden of establishing that there is a genuine issue of material fact with respect to his allegations. *Brown v. Crawford*, 906 F.2d 667, 669-670 (11th Cir. 1990).

Though both parties speak in terms of "substantive due process," these claims, whatever they may be, are almost certainly not substantive due process claims. *See generally, McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994).

7

sought to limit the contours of the Fourteenth Amendment's Due Process Clause, preferring a more stable basis for principled decision making. *See Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1995) ("where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing' the claim") (quoting *Graham v. Connor*, 490 U.S. 386, 395 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)); *see also Albright v. Oliver*, 510 U.S. 266, 280, 114 S. Ct. 807, 816, L. Ed. 2d 114 (1994) (holding allegation of prosecution without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process; the court suggests that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity").

Based on the reasoning of *Graham* and *Albright*, the court is persuaded that if Chandler has any claim at all, it is under the Fourth Amendment as applied to state officials through the Due Process Clause of the Fourteenth Amendment. After all, there is no question but that, in appropriate circumstances, a citizen may be first urged and then compelled to submit to an appropriate physical and mental evaluation. Such is the case when a college official has reasonable cause to believe that a college student has presented a threat to faculty, students, and himself.[4]

---

[4] Moreover, the undisputed record demonstrates that Schneider first went to Chandler's residence because Chandler suspected he was the subject of some unlawful surveillance effort and asked for police assistance. Schneider returned only to follow up based upon information subsequently received. Even Chandler agrees that he initially submitted to mental health counseling because Schneider urged him to do so. There is nothing to suggest that he was coerced in any way. Finally, when Chandler was involuntarily committed, Schneider acted with sufficient basis and followed proper procedures established under Alabama law.

**B.     42 U.S.C. § 1983 - Fourth Amendment Claims**

As previously noted, Chandler apparently claims that Schneider violated the Fourth Amendment's[5] prohibition against unreasonable searches and seizures by: (1) visiting his residence and convincing him to "voluntarily" submit to a mental evaluation; and (2) petitioning for his involuntary commitment without "probable cause."

According to the Supreme Court, "a 'seizure,' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S. Ct. 1865, 1871 n. 10, 104 L. Ed. 2d 443 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S. Ct. 1868, 1879 n. 16, 20 L. Ed. 2d 889 (1968)). Moreover, a "seizure" can occur in both civil and criminal contexts. *See Soldal v. Cook County*, 506 U.S. 56, 67, 113 S. Ct. 538, 546, 121 L. Ed. 2d 450 (1992) (reaffirming "basic understanding that the protection against unreasonable searches and seizures fully applies in the civil context").

In the present matter, the evidence of record suggests that Schneider and other uniformed officers arrived at Chandler's residence on March 11, 1999, letter of suspension in hand, with the intention of convincing Chandler to voluntarily submit to a mental

---

[5] The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. 4; *see also United States v. McBean*, 861 F.2d 1570, 1573 (11th Cir. 1988) ("The Fourth Amendment to the Constitution prohibits, on its face, unreasonable searches and seizures").

evaluation. Chandler apparently consented to officers' wishes, and voluntarily accompanied them to the Northeast Regional Medical Center in Anniston, Alabama.[6]

Chandler, however, makes no significant allegation that would support a conclusion that Schneider and the other officers, by "show of authority" or otherwise, "seized" Chandler within the meaning of the Fourth Amendment.

In any event, if this conclusion is wrong, Schneider is entitled to the benefit of qualified immunity. It is uncontested that Schneider was exercising discretionary authority when he requested that Chandler submit to a mental evaluation and escorted Chandler to the hospital. The remaining issue, therefore, is whether Chandler has carried his burden of proving that Schneider violated clearly established law. Chandler has failed to cite a single case clearly establishing that Schneider's conduct violated the law on March 11, 1999. Moreover, the court has found no case in which either the Eleventh Circuit, the Supreme Court of the United States, or the Supreme Court of Alabama has considered facts and circumstances which are closely analogous to those in the case at bar. That being the case, Chandler has failed to demonstrate that Schneider violated clearly established law when he convinced the plaintiff to voluntarily seek treatment.

Chandler additionally alleges that his March 15, 2000, involuntary commitment violated the Fourth Amendment's prohibition against unreasonable searches and seizures because Schneider lacked "probable cause" to believe he was mentally ill.

---

[6] While the record is not entirely clear, Chandler suggests, and for purposes of summary judgment this court will assume, that Chandler was placed in handcuffs prior to being transported to the hospital. (Plf. Ex. 1, Affidavit of Clayton Chandler).

10

Under the law of the State of Alabama law, one who initiates an involuntary commitment proceeding must swear in writing, based on specifically described behavior, acts, attempts or threats, that he has reason to believe the respondent is mentally ill.[7] *See* Ala. Code. § 22-52-1.2 (1997).

The record before this court clearly demonstrates that, based upon his conversations and observations of the plaintiff, Schneider had legitimate concerns for the safety of Chandler as well as Jacksonville State students and faculty. For instance, as a result of having been asked to inspect Chandler's room for electronic surveillance devices, Schneider became concerned about Chandler's delusional and paranoid behavior. A few days after the inspection, Sergeant Schneider telephoned Chandler in order to determine whether his bizarre behavior had stabilized. Far from stabilized, Chandler allegedly reported being "watched" or "followed" by Jacksonville State employees and, later that same day, threatened harm to a Jacksonville State employee.[8] Schneider visited Chandler's residence and convinced him to submit to a mental evaluation at Northeast Alabama Regional Medical Center. After Chandler checked himself out of hospital, and after Chandler's parents failed to assist or take action, Schneider determined that the initiation of commitment proceedings was his only remaining option. According to the record,

---

[7] The Alabama Code defines the term "mental illness" as "[a] psychiatric disorder of thought and/or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life. Mental illness, as used herein, specifically excludes the primary diagnosis of epilepsy, mental retardation, substance abuse, including alcoholism, or a developmental disability." Ala. Code § 22-52-1.1

[8] During this telephone conversation, Schneider learned that Chandler had ridden a bicycle from Jacksonville, Alabama to Gadsden, Alabama and back to Jacksonville, a distance of fifty to sixty miles, for the sole purpose of locating the home of a University employee he claimed had been watching him and that Chandler claimed that someone had taken unauthorized photographs of his face and private parts while he was in a restroom.

11

Schneider pursued this option only after consulting with his superiors, physicians, an attorney specializing in commitment proceedings, and the Calhoun County Mental Health Center.

It is clear that, given the knowledge he had when he initiated the commitment proceedings, Officer Schneider not only complied with the requirements of Alabama law but that he also was possessed of probable cause to act as he did.[9]

## V.  Conclusion

Because the plaintiff is unable to create a genuine issue of material fact with regard to the merits of this claim, the court does not reach qualified immunity issues. The defendant's Motion for Summary Judgment will be **GRANTED** by an appropriate order in conformity with this opinion. Costs will be **TAXED** against the plaintiff.

Done, this __12th__ of February, 2001.

Edwin Nelson
United States District Judge

---

[9] In *Graham v. Conner*, the Supreme Court stated that the "objective reasonableness" standard requires the trier of fact to view an officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 of hindsight." 490 U.S. 386 at 396.